IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

|  |  |  |
|---|---|---|
| | : | |
| JONATHAN PARSONS, | : | |
| | : | CASE NO. |
| Plaintiff, | : | 5:10-CV-145 (CAR) |
| | : | |
| v. | : | |
| | : | |
| FIRST QUALITY RETAIL | : | |
| SERVICES, LLC, | : | |
| | : | |
| Defendant. | : | |

_____

ORDER ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

Currently before the Court is Defendant First Quality Retail Services, LLC's

Motion for Summary Judgment. [Doc. 18].  Through the present motion, Defendant

asserts that it is entitled to judgment as a matter of law because the claims brought by

Plaintiff Jonathan Parsons pursuant to the Americans with Disabilities Act, 42 U.S.C. §

12101, et seq. ("ADA"), are not supported by sufficient evidence to raise a genuine issue

of material fact for a jury to decide.  Upon consideration of the briefs and evidence

submitted, and for the reasons discussed below, the Court agrees.  Defendant's Motion

for Summary Judgment [Doc. 18] is **GRANTED.**

## Background

The relevant facts, viewed in the light most favorable to Plaintiff, are as follows. Defendant has a facility in Macon, Georgia, where it manufactures adult diapers. Plaintiff was hired as a Product Technician in October 2004.  At the time Plaintiff was hired, the facility was owned and operated by Tyco Healthcare Retail Group. Subsequently, Defendant purchased the facility and still owns and operates it today.

### A.  Defendant's Discipline Policy

Defendant uses a progressive discipline policy.  Under this policy, an employee's initial violation results in a verbal warning, the second escalates to a written warning, and the third results in what Defendant refers to as a Performance Improvement Plan ("PIP").  A PIP is essentially a last chance agreement that gives the employee specific instructions regarding his performance.  If the employee does not complete the PIP, the employee may be terminated.  After some period of time, older violations of the discipline policy are forgiven and no longer appear on an employee's record.[1]

---

[1] The record before the Court does not indicate when and how long it takes for such offenses to be purged from an employee's personnel file.  Defendant states that "[a]s time passes, lower levels of discipline may 'drop off,'" but Defendant provides no details as to how and when this occurs. Cohen Aff. ¶ 10.  Further, the parties do not address whether Plaintiff's problems with absenteeism, which occurred early on during his tenure with Defendant, were purged from his record before the events surrounding his termination occurred.  For the purposes of summary judgment, the Court will assume Plaintiff's record was clean; at least two years passed between his warning regarding absences and the subsequent disciplinary issues he faced.

However, depending on the severity of an employee's violation, Defendant has the discretion to move immediately to a PIP or termination.

## B. Plaintiff's Employment

As a Product Technician, Plaintiff was responsible for introducing raw materials onto a production line and keeping production lines moving. The raw materials Plaintiff worked with came in large rolls, which ranged in size from 45 to 200 pounds. Plaintiff used a mechanical hoist to lift these rolls onto the line, and Plaintiff generally replaced twenty-four to thirty rolls during each twelve hour shift. Plaintiff was responsible for placing the rolls of material into a splicing unit, which connected the new roll of material to the previous roll to ensure continuity.

Each year, Defendant's employees are given annual performance reviews. From 2004 to 2008, Plaintiff's performance as an employee was average. In Plaintiff's annual reviews, he typically fell within the acceptable range of performance, although generally at the lower end of the company's rubric. Plaintiff had some trouble with absenteeism in 2005 and 2006, and on at least one occasion received a written warning because of an unexcused absence from work.

## 1. Plaintiff's Injury

On October 21, 2008, Plaintiff injured his back while placing a roll of raw materials onto a line. He reported his injury to a supervisor and immediately went

3

home.  The following morning, Plaintiff reported his injury to Tim Spicer ("Spicer"), Defendant's Safety Manager.  Spicer sent Plaintiff to Macon Occupational Medicine for an evaluation and placed him on restricted duty.  This temporary position required Plaintiff to inspect finished product, and did not require him to do any heavy lifting.  Plaintiff was released to full duty in November 2008.  Macon Occupational Medicine indicated that Plaintiff should receive physical therapy, but Plaintiff had problems obtaining clearance for this treatment from Defendant.

Although he was released to full duty, Plaintiff continued to have problems with his back.  Plaintiff received chiropractic treatment on his own, and he obtained a prescription for Lortab from his personal physician.  Plaintiff remained on this prescription until his termination and admits that he was not able to perform his job duties without the medication.  Plaintiff reported his use of Lortab to his immediate supervisors, Shawn Bauer, Darrien Travis, and Thomas Burke as well as to Spicer, Defendant's Safety Manager.[2]  Plaintiff avers that he did not receive feedback or instructions from his supervisors regarding his use of Lortab.

---

[2] Defendant maintains that Plaintiff did not report his use of Lortab, and that his failure to do so was one of the reasons for Plaintiff's termination.  Viewing the facts in the light most favorable to Plaintiff, the Court will accept that Plaintiff reported his use of Lortab to his supervisors.

### 2.   Plaintiff is given a final warning

On June 22, 2009, Plaintiff had a verbal altercation with a coworker, Donny Melver ("Melver").  Melver, a Maintenance Technician, was working on the same production line as Plaintiff.  Melver approached Plaintiff and told him to clean the area for the next shift.  Plaintiff retorted that he "always did his damn job," to which Melver replied that he knew Plaintiff did his job.  Plaintiff then made an abusive and arguably racist comment to Melver.  Melver asked Plaintiff to repeat himself, and when Plaintiff made the comment again, Melver grabbed Plaintiff by the throat.  The altercation was witnessed by a coworker and reported to Plaintiff's supervisors.  Melver was terminated for his actions, and Plaintiff was given a final warning.  The warning indicated that further violations of Defendant's policies could result in Plaintiff's termination.

### 3.   Plaintiff's termination

On August 27, 2009, Plaintiff approached his supervisor, Robert Plummer ("Plummer"), and reported that someone had taken Lortab tablets from Plaintiff's lunchbox, which was stored in the refrigerator in the employee break room.  Plaintiff asked to see the surveillance video of the break room, and Plummer told Plaintiff he would have to get access to the video from someone in Human Resources.  Plaintiff

5

named two coworkers, Faye Ogletree and Beth Carson, as potential witnesses to the theft.

Plummer reported the theft to Human Resources, and Naomi Stifter ("Stifter"), Defendant's Human Resources Manager at the time, investigated the incident.  Stifter reviewed the videotape and concluded that only Plaintiff accessed his lunchbox during his shift that evening.  Stifter also noted that the surveillance video showed that Plaintiff took five excessively long breaks instead of his three scheduled breaks.[3]  Stifter obtained statements from Faye Ogletree and Beth Carson.  Although both employees were in the break room, neither had knowledge of the alleged theft.  Throughout the investigation, Plaintiff pointed to a coworker, Dwayne Sharp ("Sharp"), as the potential thief.  Sharp gave a statement that he knew nothing about Plaintiff's prescription and did not take any medication from Plaintiff's lunchbox.  In Sharp's statement, he indicated Plaintiff had approached him and questioned him about the missing Lortabs.  When Sharp stated he did not know anything about the medication, Plaintiff told him that someone had taken approximately forty Lortabs from his bag.  Sharp responded, "Why the hell would you bring that many to work?"  Cohen Aff. ¶ 27.

---

[3] Plaintiff asserts that he was instructed to take these numerous breaks because his production line was down, and he was working with several different lines.  For purposes of summary judgment, the Court will accept Plaintiff's assertion that he was instructed to take numerous breaks.

On September 8, 2009, Plaintiff met with Stifter and several other members of Defendant's management regarding the results of Stifter's investigation.  During this meeting, management reviewed Defendant's drug policy with Plaintiff.  The policy prohibits employees from "using, possessing, dispensing, selling, trading, distributing, transferring, manufacturing, or being under the influence of Drugs or Alcohol while working or performing job duties or while at the Company." Cohen Aff. Ex. 2.  The policy also states that the "use of prescription and Over-the-Counter Drugs is not prohibited when taken in a standard dosage and/or according to a physician's prescription where such use does not adversely impact a team member's ability to perform his or her job."  Id.

During this meeting, Plaintiff told management that he had given coworkers some of his prescription medication, and he acknowledged that it was a violation of Defendant's drug policy to do so.  Specifically, Plaintiff stated, "I've given some medication to somebody before."  Parsons Aff. ¶ 18.  A member of management asked, "Was it Lortab?"  Id.  Plaintiff replied, "Yeah."  Id.  Plaintiff also admitted to repeatedly naming Dwayne Sharp as the potential thief even though Plaintiff had no reason to suspect Sharp's involvement.  See Cohen Aff. Ex. 16.  Plaintiff was suspended without pay pending management's final decision regarding his employment.

On September 10, 2009, Stifter recommended Plaintiff's termination for several reasons: Plaintiff stated that he distributed Lortab, a controlled narcotic, to other employees; Plaintiff did not report that he was using Lortab, a drug which could affect his performance, during work hours; Plaintiff took excessive breaks on August 27, 2009; and Plaintiff admitted to making disparaging and false statements about Sharp during the investigation.   Plaintiff's termination was approved by Defendant's senior management, and Plaintiff was terminated effective September 14, 2009.

Throughout Plaintiff's meeting with management, Stifter's investigation, and the rest of Plaintiff's employment with Defendant, Plaintiff did not retract his statement that he distributed Lortab to coworkers.  However, during his deposition for this case, Plaintiff attempted to retract the statement and said that he felt coerced into making it in September 2009.  Plaintiff now asserts that he never gave coworkers Lortab.  Instead, Plaintiff claims that he occasionally gave coworkers Ibuprofen, which he also kept in his lunchbox.  When questioned as to why Plaintiff admitted to distributing a narcotic if it was not true, Plaintiff stated that he felt harassed and trapped during the meeting and that it was an "uneasy time." Parsons Aff. ¶ 18.

Plaintiff filed a charge of discrimination with the EEOC and after receiving his right to sue letter in January 2010, he filed suit in this Court.  Plaintiff alleges that he

was discriminated and retaliated against based on his disability.  Defendant has now moved for summary judgment [Doc. 18].

## Legal Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party, or if reasonable minds could not differ as to the verdict.  See id. at 249-52.  When ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, but the Court must not make credibility determinations or weigh the evidence.  Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 150 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of

material fact" and that entitle it to a judgment as a matter of law. Celotex Corp., 477 U.S. at 323 (internal quotation marks omitted). "Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The nonmoving party must then go beyond the pleadings and point to specific evidence raising a genuine issue of material fact, or otherwise show that the moving party is not entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 324-26. In the employment discrimination context, unverifiable conjecture, unsupported opinions, and unsubstantiated allegations of coworkers cannot suffice as viable summary judgment evidence, especially where contradictory of highly credible and authenticated record evidence. See Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d 653, 658-59 (11th Cir. 1998) (rejecting plaintiff's unverifiable, anecdotal testimony about alleged comparators).

## Discussion

The ADA prohibits discrimination against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees … and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). There are two types of disability discrimination claims relevant to Plaintiff's

Complaint.  The first, disparate treatment claims, are generally analyzed under the familiar <u>McDonnell Douglas</u> burden-shifting framework.  <u>Holly v. Clairson Indus., LLC</u>, 492 F.3d 1247, 1255 (11th Cir. 2007).  In addition, the definition of discrimination under the ADA includes the failure to make reasonable accommodations for the limitations of a qualified individual with a disability.  42 U.S.C. § 12112(b)(5)(A).  There is some ambiguity as to whether the <u>McDonnell Douglas</u> framework applies to failure to accommodate claims, and this Court has declined to apply it to those types of claims. <u>Wright v. Hosp. Auth. of Houston County</u>, No. 5:07-CV-281 (CAR), 2009 WL 274148, at *7 (M.D. Ga. Feb. 3, 2009).

Ultimately, a disparate treatment disability discrimination claim is conceptually different than a failure to accommodate claim, and they are essentially inapposite.  As the Eleventh Circuit has stated, the basis for a failure to accommodate claim is that an employer, because of a particular employee's needs as a disabled individual, is *required* to treat that individual differently than other employees.  <u>Holly</u>, 492 F.3d at 1262. However, a disparate treatment disability discrimination claim is much like a Title VII discrimination claim – the plaintiff is seeking relief *because* he has been treated differently based on his status as a disabled individual.

Here, Plaintiff's brief simultaneously presents Plaintiff's claim as (1) a failure to accommodate claim; (2) a disparate treatment disability claim; and (3) a mixed motive

claim.   When Plaintiff initially filed his Complaint, he was unrepresented, and his Complaint appeared to only raise disparate treatment and retaliation claims.  The Court affords pro se parties wide latitude when construing their pleadings and papers.  <u>S.E.C. v. Elliott</u>, 953 F.2d 1560, 1582 (11th Cir. 1992).  However, the Court is not required to exempt a pro se litigant from complying with the relevant rules of procedure and substantive law.   <u>Wayne v. Jarvis</u>, 197 F.3d 1098, 1104 (11th Cir. 1999).   This is particularly the case here, where Plaintiff is now represented and had the opportunity to file an amended complaint.  Nevertheless, the Court will address each of Plaintiff's claims.

### A.  Failure to Accommodate Claim

Defendant argues that Plaintiff raises a failure to accommodate claim in his Response for the first time, and the Court should not address this claim because it is not raised in Plaintiff's Complaint or in his charge with the EEOC.  Defendant correctly points out that the scope of a plaintiff's complaint is limited to those claims included in the EEOC charge and investigation and those claims which can reasonably be expected to "grow out of the charge of discrimination." <u>Armstrong v. Lockheed Martin Beryllium Corp.</u>, 990 F. Supp. 1395, 1400 (M.D. Fla. 1997) (citing <u>Turner v. Orr</u>, 804 F.2d 1223 (11th Cir. 1986)).  Defendant asserts that Plaintiff's charge with the EEOC makes no mention of a failure to accommodate claim.  However, as Plaintiff's EEOC charge is not part of

the record, the Court is unaware of its contents and is unable to substantiate Defendant's argument.  See Sanchez v. Standard Brands, Inc., 431 F.2d 455, 462 (5th Cir. 1970) (holding that, in determining the scope of the EEOC charge, the court should look to the "factual statement therein," which is the "crucial element of a charge of discrimination").[4]

Plaintiff's Complaint does state that "allowing [Plaintiff] to take [his] medication wouldn't cause undue hardship to the Company." [Doc. 1].   The words "undue hardship" could have given Defendant some indication that Plaintiff intended to raise such a claim.  However, even under the most liberal reading of Plaintiff's Complaint, it would be unfair to hold that the words "undue hardship" gave Defendant fair notice that Plaintiff intended to raise a failure to accommodate claim.  A complaint must give the defendant "fair notice of what the claim is and the grounds upon which it rests." Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008); Palmer v. Albertson's, LLC, 418 Fed. Appx. 885, 889 (11th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, ---, 129 S. Ct. 1937, 1949 (2009)).   If Plaintiff intended to state a failure to accommodate claim, he should have articulated it in a separate count so that Defendant could "discern what he [was] claiming and frame a responsive pleading." Palmer, 418 Fed. Appx. at 889 (holding district court did not err in declining to consider hostile

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

work environment claim where plaintiff did not articulate it separately in the complaint but used the words "harassed" and "hostile"). Thus, the Court declines to consider Plaintiff's failure to accommodate claim because it was not initially raised in Plaintiff's Complaint, and Plaintiff, even after retaining an attorney, neglected to amend his Complaint.

### B. Disability Discrimination Claim

To prove a disability discrimination claim under the ADA, Plaintiff must first establish a prima facie case. To do so, Plaintiff must show that: (1) he is disabled within the meaning of the statute; (2) he is a "qualified individual"; and (3) he was subjected to unlawful discrimination based on his disability. Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000). Under the familiar burden-shifting framework, after a plaintiff establishes a prima facie case of discrimination, the employer has the opportunity to articulate a legitimate, nondiscriminatory reason for the challenged action. Finally, the burden shifts back to the plaintiff to produce sufficient evidence to allow a fact finder to conclude that the employer's reasons were not the real reasons for the adverse employment action. Wascura v. City of S. Miami, 257 F.3d 1238, 1242-43 (11th Cir. 2001).

**1.  Plaintiff's Prima Facie Case**

Defendant asserts that Plaintiff cannot show that he is disabled within the meaning of the ADA.  The ADA and the regulations define "disability" as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of the individual; (2) a record of such impairment; or (3) being regarding as having an impairment.  42 U.S.C. § 12102(1).  The regulations provide that an "impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the population."  29 C.F.R. § 1630.2(j)(1).

Plaintiff asserts that he is disabled as a result of the back injury he suffered on the job in October 2008.[5]  He specifically asserts that this injury substantially limits a number of activities in his day to day life: kneeling, bending, driving, shopping, walking, working,[6] exercising, sexual function, and working on cars.  Defendant does

---

[5] Plaintiff also asserts that Defendant regarded him as having a disability.  However, Plaintiff makes this argument for the first time in his Response, and thus the Court declines to consider it.  See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").  In his Complaint, Plaintiff asserted only that he was discriminated against based on his disability, and did not include any language or indication that he intended to pursue a claim that Defendant regarded him as disabled.  [Doc. 1].

[6] In October 2009, Plaintiff's physician declared him completely unable to work as a result of his back injury.  Plaintiff's physician had not made this assessment at the time of Plaintiff's termination, and thus it is irrelevant for purposes of Defendant's motion.  See Wood v. Green, 323 F.3d 1309, 1313 (11th Cir. 2003) ("The ADA covers people who can perform the essential functions of their jobs presently or in the

not seem to dispute that Plaintiff's back injury is impairment; instead, Defendant asserts that this injury has not substantially limited any major life activity.   In response, Plaintiff provided an affidavit indicating that he is unable to walk more than 100 yards without pain; that he is unable to drive for periods of longer than forty-five minutes; and that he experiences pain when bending or kneeling.   Parsons Aff. ¶ 5.   The Court finds that Plaintiff has shown he is disabled within the meaning of the ADA.

Plaintiff must also demonstrate that he is a "qualified individual." Earl, 207 F.3d at 1365.   The regulations define a qualified individual as "an individual with a disability who satisfies the requisite skill, experience, education, and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of the position." 29 C.F.R. § 1630.2(m).   Plaintiff asserts that he was qualified to perform the essential functions of his position because he was able to do so for eight months while taking Lortab "without incident." [Doc. 23, p. 14].   The Court questions whether a lack of accidents while Plaintiff operated heavy machinery on a controlled narcotic necessitates a finding of "qualified" within the meaning of the ADA, but Defendant does not dispute this issue, and thus Plaintiff meets the second prong of the prima facie case.

---

immediate future."); Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001) (a plaintiff must show he was a "'qualified individual' at the relevant time").

Finally, Plaintiff must show that he was discriminated against because of his disability. Plaintiff's arguments on this issue are difficult to decipher, and he seems to conflate the requirements of a prima facie case of disability discrimination with those of a failure to accommodate claim. Nevertheless, Plaintiff asserts he was discriminated against based on his disability when Defendant terminated him for failing to report his use of Lortab pursuant to Defendant's drug policy, which required employees to report any prescription drug use that could affect an employee's performance. Plaintiff argues that this policy is a *per se* violation of the ADA. Plaintiff does not elaborate on how the policy violates the ADA, so the Court must assume that Plaintiff is arguing that Defendant's policy is an improper medical inquiry pursuant to 42 U.S.C. § 12112(d)(4), and that Defendant's application of this policy constituted discrimination.

However, Plaintiff also vehemently argues that he *voluntarily* reported to his supervisors that he was taking Lortab. Generally, where an employee voluntarily discloses medical information related to a disability, he cannot assert a claim regarding an improper medical inquiry. Cash v. Smith, 231 F.3d 1301, 1307 (11th Cir. 2000); Grimsley v. Marshalls of MA, Inc., 284 Fed. Appx. 604, 610 (11th Cir. 2008) (noting that where an employee voluntarily discloses information, "the employee cannot establish an unlawful disclosure under the ADA"). When an employee voluntarily discloses information, the employer does not receive it through a medical inquiry as defined by

17

42 U.S.C. § 12112(d)(4).   Thus, if Plaintiff voluntarily reported his use of Lortab, no medical inquiry could have occurred.[7]

In addition, Plaintiff misstates the law.   Although Plaintiff argues that Defendant's policy is an unlawful employment practice, the ADA permits an employer to make inquiries "into the ability of an employee to perform job related functions," and if Defendant's policy is job-related and consistent with business necessity, it does not violate the ADA.   42 U.S.C. § 12112(d)(4)(B).[8]   Although only a few courts have addressed such a policy, several have indicated that requiring employees to report prescription drugs would trigger the ADA's protections and thus be a prohibited medical inquiry if not job-related and consistent with business necessity.  See, e.g., Roe v. Cheyenne Mountain Conference Report, 920 F. Supp. 1153 (D. Colo. 1996) overruled on other grounds, 124 F.3d 1221 (10th Cir. 1997); Lee v. City of Columbus, Ohio, 636

---

[7] As noted above, Defendant disputes Plaintiff's claim that he voluntarily reported his prescription drug use.  Yet in its brief in support of its Motion for Summary Judgment, Defendant states, "At most, Parsons can demonstrate that First Quality was aware that he was taking a pain killing prescription medication and that he received chiropractic treatment." [Doc. 18-2, p. 13].  For all intents and purposes, Defendant appears to concede, for purposes of this Motion, that it had knowledge of Plaintiff's prescription drug use.

[8] See also EEOC, Enforcement Guidance, Disability Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act, 2 EEOC Compl. Man. (CCH) P6910 (2000), available at http://www.eeoc.gov/policy/docs/guidance-inquiries.html (last visited Nov. 29, 2011). The EEOC Enforcement "Guidance was designed for ... use by EEOC investigators, pending coordination with other federal agencies. It is not binding law, but as a detailed analysis of the relevant ADA provisions, it aids [the court's] interpretation of the [ADA]." Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 673 (1st Cir. 1995) (cite omitted).

F.3d 245 (6th Cir. 2011); <u>Conroy v. N.Y. State Dep't of Correctional Serv.</u>, 333 F.3d 88 (2d Cir. 2003); <u>Bates v. Dura Auto. Sys., Inc.</u>, No. 1:08-CV-0029, 2011 WL 3664444 (M.D. Tenn. Aug. 19, 2011).

Here, Defendant asserts that the policy is job-related and consistent with business necessity because Plaintiff was required to operate high-speed machinery which could cause serious injuries if operated by an impaired employee.   Plaintiff acknowledges that his job was physically challenging and that he was required to lift heavy materials and operate heavy machinery.   Further, Plaintiff has failed to argue that Defendant's policy was not job-related and consistent with business necessity.   Thus, even if Plaintiff reported his prescription, the Court finds, and Plaintiff does not argue otherwise, that Defendant's policy complies with the ADA regulations.   As Plaintiff has presented no evidence that he was discriminated against on the basis of his disability, he has failed to establish a prima facie case.

### 2.  Defendant's legitimate, nondiscriminatory reasons

Even assuming Plaintiff has established a prima facie case, Plaintiff nevertheless has failed to rebut the Defendant's legitimate, nondiscriminatory reasons for his termination.   Once a prima facie case has been established, Defendant may rebut it by articulating a legitimate, nondiscriminatory reason for the adverse employment action. <u>Cleveland v. Home Shopping Network, Inc.</u>, 369 F.3d 1189, 1193 (11th Cir. 2004).

Defendant has only the burden of production, and does "not need to persuade the court that it was motivated by the reason."  Id.  Here, Defendant asserts several reasons for Plaintiff's termination: Plaintiff failed to report his use of a controlled narcotic; Plaintiff admitted to distributing a controlled narcotic to coworkers; Plaintiff took excessive breaks on August 27, 2009; and Plaintiff admitted to making false and disparaging remarks regarding a coworker.  Defendant has met the burden of production, and thus Plaintiff is saddled with proving that Defendant's reasons were mere pretext for unlawful discrimination.

### 3.  Pretext

When an employer offers more than one nondiscriminatory reason, the plaintiff must then "proffer sufficient evidence to create a genuine issue of material fact as to whether each of the defendant's proffered reasons is pretextual." Wascura, 257 F.3d at 1243.  As noted above, Defendant has offered four reasons: (1) Plaintiff failed to report his use of a controlled narcotic; (2) Plaintiff admitted to distributing a controlled narcotic to coworkers; (3) Plaintiff took excessive breaks on August 27, 2009; and (4) Plaintiff admitted to making false and disparaging remarks regarding a coworker.

Plaintiff specifically challenges only Defendant's first reason, the requirement that prescription drugs be reported to supervisors.  In addition, Plaintiff also asserts that he was fired for his use of Lortab, and argues that this was proffered by Defendant

as a legitimate, nondiscriminatory reason for his termination.  Plaintiff seems to picture Defendant's legitimate, nondiscriminatory reasons as a pie chart.   Through rather circular reasoning, he asserts that because two of the four reasons are "per se violations" of the ADA, "[f]ifty percent of the reasons for termination violate the ADA." [Doc. 23, p. 19].  Plaintiff therefore concludes that since half of the imaginary pie chart violates the ADA, Plaintiff's disability must have been a "substantial motivating factor" for his termination.  Id.

There are numerous problems with this analysis.  As a threshold matter, whether a mixed motive theory is cognizable under the ADA is still an open question in this circuit.[9]  Nevertheless, without addressing whether a mixed motive analysis is proper, Plaintiff has failed to prove that Defendant's reasons are pretext for discrimination. Contrary to Plaintiff's vision, Defendant's legitimate, nondiscriminatory reasons are not a pie chart, and Plaintiff must point to sufficient evidence to raise a genuine issue of material fact as to each.  Wascura, 257 F.3d at 1243.

---

[9] In Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009), the Supreme Court held that a mixed motive jury instruction is never proper in a case involving a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq., because the ADEA does not contain the mixed motive language of Title VII, but instead prohibits an employer from taking adverse action "because of" an employee's age.  While the Eleventh Circuit has not addressed the issue, several circuits have expanded the reasoning of Gross to the ADA because it contains very similar language.  See Serwatka v. Rockwell Automation, Inc., 591 F.3d 957 (7th Cir. 2010); Bolmer v. Oliveira, 594 F.3d 134 (2d Cir. 2010); Ross v. Indep. Living Res. of Contra Costa County, 2010 WL 2898773 (N.D. Cal. 2010); Warshaw v. Concentra Health Serv., 2010 WL 2470881 (E.D. Pa. 2010).

In his meeting with management in September 2009, Plaintiff admitted to giving coworkers prescription medication.  Plaintiff now asserts that this statement was false and that he felt pressured into making it.  Whether Plaintiff actually distributed the Lortab to coworkers is, at this point, irrelevant.  A court is only concerned with whether the stated reason is pretext for discrimination, not whether the reason is true.  Denney v. City of Albany, 247 F.3d 1172, 1188 (11th Cir. 2001).  There is no indication that Defendant had any reason to disbelieve Plaintiff's statements during the meeting, and this Court's inquiry is limited to whether Stifter and the other members of management believed that Plaintiff distributed the drugs, and whether that reason was behind his termination.  Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991); Hawkins v. Ceco Corp., 883 F.2d 977, 980 (11th Cir. 1989) (employee's actual conduct irrelevant to the question of whether the employer believed the employee had done wrong).  This Court does not "sit as a super-personnel department that reexamines an entity's business decisions." Denney, 247 F.3d at 1188 (citation omitted).  Despite Plaintiff's attempted retraction, Plaintiff fails to show that Defendant had reason not to believe Plaintiff at the time and that this reason was pretext for discrimination.

The same reasoning applies to Defendant's final legitimate, nondiscriminatory reasons: Plaintiff took excessive breaks on August 27, 2009, and Plaintiff admitted to making false and disparaging remarks regarding a coworker.  Plaintiff has not

presented any evidence of pretext regarding these or any other reasons proffered by Defendant.  Plaintiff asserts that Defendant discharged him for his use of Lortab, but he has been unable to provide any evidence of this that would indicate Plaintiff's reasons were pretext for discrimination.  Thus, Plaintiff's disability discrimination claim must fail.

### C.  Retaliation Claim

In Plaintiff's Complaint, he alleges that Defendant discharged him in retaliation for reporting a crime.  Plaintiff seems to have abandoned this claim, as he does not address it in his Response.  Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001) (holding that a claim included in a complaint but not raised at summary judgment is deemed abandoned); Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) (same).  However, even if Plaintiff has not abandoned his claim, it is due to be dismissed because Plaintiff has failed to show that he engaged in any protected activity.

The ADA's anti-retaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual has made a charge … under [the ADA]." 42 U.S.C. § 12203(a).  To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related

23

to the protected expression. <u>Weeks v. Harden Mfg. Corp.</u>, 291 F.3d 1307, 1311 (11th Cir. 2002).

To establish that Plaintiff engaged in protected activity, he must show that he "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." <u>Id.</u> (citation omitted).  Plaintiff alleges that he "reported a crime that occurred on Company property."  [Doc. 1].  Although Plaintiff does not include any specifics regarding this alleged crime, the Court assumes he is referring to the alleged theft of his medication in September 2009.  While reporting alleged suspicious activity or theft is admirable, it is not related to opposing any unlawful employment practices and thus does not fall within the confines of the ADA's anti-retaliation provision.  <u>See</u> <u>Todd v. McCahan</u>, 158 F. Supp. 2d 1369, 1380 (N.D. Ga. 2000) (plaintiff did not engage in statutorily protected activity under the ADA where he did not oppose any act or practice prohibited by the ADA).  Plaintiff cannot establish a prima facie case of retaliation, and Defendant's request for summary judgment as to this claim is hereby **GRANTED.**

**Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. 18]

is hereby **GRANTED.**

SO ORDERED, this 20th day of January, 2012.


<u>S/  C. Ashley Royal</u>
C. ASHLEY ROYAL, CHIEF JUDGE
UNITED STATES DISTRICT COURT


AES/lmh/ssh